## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IN RE** | : | |
| | : | **Chapter 7** |
| **OCHOLI OCHALA IREDIA** | : | |
| | : | |
| **DEBTOR** | : | |
| | : | **Case No. 15-18450AMC** |

Ashely M. Chan, United States Bankruptcy Judge

## <u>OPINION</u>

### I.    INTRODUCTION

The United States Trustee has filed a motion under § 707(a) to dismiss this case for bad faith and to bar the Debtor from refiling another bankruptcy for two years based upon the Debtor's repeated refusal to answer the Chapter 7 Trustee's questions at numerous meetings of creditors, the Debtor's refusal to produce documents requested by the Chapter 7 Trustee and to comply with the Court's subsequent order to provide such documents to the Chapter 7 Trustee, the Debtor's misrepresentation of his ownership interest in a Minuteman Press franchise and membership interest in a related entity, and the Debtor's filing of false and contradictory schedules with the Court and refusal to cooperate with the Chapter 7 Trustee's efforts to resolve these inconsistencies. After reviewing the purpose of § 707(a), the Court has concluded that it will dismiss the Debtor's case with a two-year bar to refiling.

## II.    FACTS AND PROCEDURAL HISTORY

### A.    The Baystone Bankruptcy

On October 19, 2012, Baystone Group LLC ("Baystone") filed a voluntary chapter 7 petition which was signed and filed by the Debtor as president of Baystone. The petition listed the Debtor as the 100% owner of Baystone.

Terry P. Dershaw ("Dershaw") was appointed as the Chapter 7 Trustee in the case and he scheduled an initial meeting of creditors pursuant to § 341 of the Bankruptcy Code for December 12, 2012. At the meeting of creditors, the Debtor testified that he personally owned a Minuteman Press franchise ("MP Franchise") as evidenced by a Bill of Sale entered into between Charles McAnally and Loretta McAnally ("McAnallys") as seller and the Debtor as buyer ("Debtor Bill of Sale") on November 26, 2008. Mot. to Extend Time Within Which Trustee May Assume, Assign or Reject Franchise Agreement ("Mot. to Extend Time") ¶¶ 11–12, ECF No. 25. The Debtor specifically testified that Baystone never owned the MP Franchise. *Id.* ¶ 11. He also testified that an entity named Minuteman Press Conshohocken LLC ("MPC") was created in October 2012 because "Baystone's bank accounts were being garnished by a creditor." *Id.* ¶ 13.

Based upon the foregoing, Dershaw concluded that the Debtor, not Baystone, owned the MP Franchise. Accordingly, the case was closed and no assets were administered. *Id.* ¶ 15.

### B.    The Debtor's 2014 Bankruptcy

On October 14, 2014, approximately two (2) years after Baystone's bankruptcy filing, the Debtor filed a voluntary Chapter 7 bankruptcy petition *pro se*, Bankruptcy No. 14-18353 ("2014 Bankruptcy"). Christine C. Shubert was appointed as the Chapter 7 Trustee in that case ("Trustee"). On January 16, 2015, the Debtor attended the initial meeting of creditors ("Initial Meeting") and the Trustee gave the Debtor a list of documents to bring to the next meeting of creditors. Pro Se Mot. to Reinstate Case, Bankr. No. 14-18353, ECF No. 40. The Debtor failed to

attend the next two meetings of creditors scheduled by the Trustee. As a result, the Court

dismissed the Debtor's 2014 Bankruptcy on May 19, 2015.

On July 6, 2015, the Debtor filed a motion to reopen his 2014 Bankruptcy based upon his

representation that he had most of the documents previously requested by the Trustee at the

Initial Meeting. On July 27, 2015, the Court granted the Debtor's motion to reopen the 2014

Bankruptcy.

The Trustee scheduled a fourth meeting of creditors ("Fourth Meeting") for September 1,

2015. At the Fourth Meeting, the Debtor failed to provide valid social security identification,

bank statements, and tax returns, so the Trustee continued the meeting of creditors until

September 30, 2015 ("Fifth Meeting").

On September 14, 2015, the Debtor filed a letter with the Court ("Debtor's Letter")

requesting a status conference to address the Debtor's concerns with the documents requested by

the Trustee and accusing the Trustee of holding up the Debtor's "discharge illegally." Pro Se

Letter Requesting Debtor/Trustee Conference, Bankr. No. 15-18450, ECF No. 52. The Court

scheduled a status conference in connection with the Debtor's Letter for October 5, 2015. In the

meantime, the Debtor failed to attend the Fifth Meeting and the Trustee continued the meeting of

creditors again until October 14, 2015 ("Sixth Meeting").

On October 4, 2015, the Court held a status conference in connection with the Debtor's

Letter and attempted to resolve the Debtor's concerns with the Trustee's document requests by

reviewing the role of the Trustee in the Debtor's case and confirming that the Trustee was

entitled to request the documents that she sought from the Debtor.

The Debtor subsequently attended the Sixth Meeting and the Trustee questioned the

Debtor about the MP Franchise and MPC. Tr. of Hr'g Apr. 13, 2016, 49:23–50:16, ECF No. 85.

The Trustee concluded that the Debtor owned the MP Franchise as well as a 33% membership interest in MPC based on: (1) certain royalty statements between MPC and Minuteman Press International, Inc. ("MPI"); and (2) the Debtor's testimony given to Dershaw during the Baystone meeting of creditors. *Id.* at 13:7–21. The Debtor, however, characterized the Trustee's questions as irrelevant; asserted that she was unauthorized to ask them; refused to answer her questions; and denied ownership of MPC. *Id.* at 51:1–8. The Trustee also requested that the Debtor identify other individuals associated with MPC, but the Debtor refused to do so. Tr. of Hr'g May 4, 2016, 50:15–17, ECF No. 86. He also refused to provide his father's and brother's addresses, individuals whom he previously indicated were associated with MPC. *Id.* at 50:21–24. The Debtor did testify, however, that he was MPC's agent and manager, paid its bills, and had access to its bank accounts. Tr. of Hr'g Apr. 13, 2016, 50:4–16.

During the meeting, the Trustee explained to the Debtor that he had the right to decline to answer questions under the Fifth Amendment and asked him if he wanted to exercise such rights. Tr. of Hr'g May 4, 2016, 89:9–16. The Debtor declined. *Id.* Instead, he directed the Trustee to contact his attorney, but refused to provide the name of his attorney to her. Tr. of Hr'g Apr. 13, 2016, 11:23–12:2.

Finally, the Debtor denied that he owned a vehicle, but refused to describe his primary means of transportation or how he had traveled to the Sixth Meeting. *Id.* at 56:25–57:4. After the Sixth Meeting, however, the Trustee observed the Debtor drive away in what appeared to be a Range Rover, which the Debtor later denied. *Id.* at 43:2–3, 57:5–8.

Based upon the foregoing, the Trustee adjourned the meeting of creditors again to November 19, 2015 ("Seventh Meeting"). He also requested that the Debtor bring the following documents to the Seventh Meeting:

a copy of the bill of sale from the sale of the Minuteman Press stock or Franchise, copy of deed to his real property, addresses of father and brother, name and contact number for attorney for Minuteman Press Conshohocken LLC, copy of Franchise agreement with Minuteman Press when the Franchise was purchased by the debtor or his entities,[ ]all tax returns from 2010 to date filed by the debtor or any entity owned by him, and any franchise agreement entered into with Minuteman Press LLC.

Continuance, Bankr. No. 14-18353, ECF No. 56.

On October 19, 2015, the United States Trustee ("UST") filed a motion to dismiss the Debtor's 2014 Bankruptcy ("First Motion to Dismiss"), based upon the Debtor's failure to provide the documents requested by the Trustee and the Debtor's "evasive, obstructionist and unresponsive" testimony at the various meetings of creditors. Mot. to Dismiss Pursuant to 11 U.S.C. § 707(a) ¶¶ 12–13, Bankr. No. 14-18353, ECF No. 57. On November 9, 2015, the UST filed an Amended Motion to Dismiss ("Amended Motion") and argued that, in addition to the reasons listed in the First Motion to Dismiss, the 2014 Bankruptcy should be dismissed because the Debtor failed to obtain credit counseling within the 180 days prior to the 2014 Bankruptcy as required under § 109(h)(1). Am. Mot. to Dismiss Pursuant to 11 U.S.C. § 707(a) ¶¶ 6–7, Bankr. No. 14-18353, ECF No. 71. The Court held a hearing on the Amended Motion on November 18, 2015, and ultimately entered an order dismissing the 2014 Bankruptcy because the Debtor failed to obtain timely credit counseling as required under § 109(h)(1).

### C.    The Debtor's 2015 Bankruptcy

The Debtor commenced this Chapter 7 bankruptcy case *pro se* on November 24, 2015 ("2015 Bankruptcy"). Christine C. Shubert was again appointed as the Trustee in the case. The Debtor attached to his bankruptcy petition a copy of the Debtor Bill of Sale, which he first mentioned to Dershaw at Baystone's meeting of creditors. The Debtor Bill of Sale purports to convey substantially all of the assets of a Minuteman Press Full Service Printing Center in Conshohocken and "[t]he name MINUTEMAN PRESS OF CONSHOHOCKEN and all

variations thereof and trade names associated therewith" from the McAnallys to the Debtor in

May 2009.[1] Voluntary Petition Ex. 1, ECF No. 1.

The Debtor also attached to his bankruptcy petition another, almost identical bill of sale,

dated December 29, 2009, which was never presented to Dershaw during the Baystone meeting

of creditors. This bill of sale also purported to convey substantially all of the assets of a

"marketing services and printing business" in Conshohocken and "[t]he name MINUTEMAN

PRESS OF CONSHOHOCKEN and all variations thereof and trade names associated

therewith," from Baystone to MPC ("MPC Bill of Sale"). *Id.* Ex. 2. Based upon the MPC Bill of

Sale, the Debtor now took the position that the MP Franchise was originally owned by Baystone,

not the Debtor, and subsequently transferred to MPC. Mot. to Extend Time ¶ 8. As discussed

above, this new position was completely inconsistent with the testimony that the Debtor provided

during the Baystone meeting of creditors and the Debtor Bill of Sale.

In addition, although the Debtor failed to disclose any ownership interest in MPC in his

bankruptcy schedules, he filed an Operating Agreement for Minuteman Press Conshohocken

LLC ("Operating Agreement") on December 2, 2015, which lists the Debtor as one of three

members of MPC as well as its resident agent and manager.[2] Voluntary Petition Schedules A–J;

Operating Agreement §§ 1(e), 7(a), Ex. A, ECF No. 19. Notably, even though the Debtor

testified during the Baystone meeting of creditors that MPC was not created until October 2012,

the Operating Agreement was actually dated December 29, 2009.

---

[1] The Debtor and the Trustee collectively refer to the assets listed in the Debtor Bill of Sale as the MP
Franchise.

[2] Moreover, the Debtor "failed to file a signed Declaration that the answers contained in the Chapter 7
schedules are true and correct." Mot. to Dismiss Pursuant to 11 U.S.C. § 707(a) ¶ 15, ECF No. 53.

On December 2, 2015, the Debtor also filed a Statement of Membership Interest in MPC, which admitted that he holds an ownership interest in MPC, albeit only 20% interest. Statement of Membership Interest 1, ECF No. 18. However, he contended that because "my capital contribution as well as my distributive sharing ratio of income or loss is 0% . . . . all [of MPC's] financials are properties of the distributive sharing members not mine, nor are they assets of MPC." *Id.* Finally, he alleged that he was relieved of his responsibilities as manager of MPC effective November 1, 2015. *Id.* However, the Trustee asserts that "no evidence of this action has been provided." Mot. to Compel Debtor to Turnover Property of the Estate ¶ 11, ECF No. 27.

Given these inconsistencies, the Trustee maintained that the Debtor owned a membership interest in MPC that constituted "property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)." *Id.* ¶¶ 5, 9. In order to "investigate the value of the Debtor's Interest in MPC," the Trustee requested that the Debtor produce certain documents ("Documents") through correspondence dated November 30, 2015 ("Document Request").[3] *Id.* ¶¶ 12–13. On December 8, 2015, the Trustee filed a Motion to Compel the Debtor to produce the documents ("Motion to Compel") because "no response was received" to the Document Request. Mot. for an Order Finding the Debtor in Contempt ¶ 10, ECF No. 51.

On January 6, 2016, the Court held a hearing on the Motion to Compel and ultimately entered an order granting the Motion to Compel and directing the Debtor to produce the Documents by February 6, 2016 ("Production Order"). *Id.* ¶¶ 12–13. The Court also advised the

---

[3] The Documents included (a) MPC's tax returns; (b) MPC's bank statements and canceled checks; (c) MPC's receipts, disbursements journal, and other financial records; (d) MPC's payroll records; (e) MPC's sales tax returns; (f) MPC's 1099s; (g) MPC's reports to MPI; (h) access to MPC's and the Debtor's computers; (i) access to MPC's websites and social media accounts; (j) access to MPC's and the Debtor's tax accountants; (k) MPC's leases and contracts; (l) contact information for unspecified landlords, insurance agents, and accountants; (m) lists of MPC's fixed assets; and (n) lists of MPC's debts. Mot. to Compel Debtor to Turnover Property of the Estate ¶ 12.

Debtor to retain counsel to help him respond to the Document Request. Tr. of Hr'g Jan. 6, 2016,

26:1–5, ECF No. 43.

The initial meeting of creditors was scheduled for January 15, 2016. However, in light of

the Production Order, the Trustee continued the meeting until February 10, 2016 ("February

Meeting") so that she would have sufficient time to review the Documents which were supposed

to be produced by the Debtor on February 6, 2016. Mot. for an Order Finding the Debtor in

Contempt ¶ 14. Although the Debtor appeared at the February Meeting, "none of the Requested

Documents were ever provided by the Debtor except for some minimal payroll records." *Id.* ¶ 16.

The Debtor also failed to retain counsel and refused to answer the Trustee's questions without

counsel.[4] Mot. to Dismiss Pursuant to 11 U.S.C. § 707(a) ¶ 16, ECF No. 53. As a result, the

Trustee continued the meeting of creditors until March 11, 2016.

On February 10, 2016, the Debtor filed a letter requesting an extension of time to retain

counsel until February 29, 2016 ("Extension Letter"). The Court held a hearing on the Extension

Letter on March 9, 2016, but the Debtor failed to appear. Based upon the Debtor's failure to

attend the hearing and the fact that the additional time requested by the Debtor to retain counsel

had already passed, the Court denied the Extension Letter.[5]

In the meantime, on February 18, 2016, the Trustee filed a Motion for an Order Finding

the Debtor in Contempt ("Contempt Motion") requesting, *inter alia*, that the Court find the

Debtor in contempt of the Production Order. In the Contempt Motion, the Trustee alleged that

because of "the Debtor's failure to comply with the terms of the [Production] Order, [she] is

---

[4] The Debtor later testified that he answered all of the Trustee's questions to the best of his ability. Tr. of
Hr'g Apr. 13, 2016, 41:1–6.

[5] The Debtor filed a letter on March 9, 2016, stating that he was unable to get to the hearing on time
because of transportation issues. However, he failed to state whether he had obtained counsel by that time.

unable to fulfill her duties as a fiduciary of the Debtor's bankruptcy estate." Mot. for an Order

Finding the Debtor in Contempt ¶ 27. She also reaffirmed her belief that the Debtor owns a one-

third interest in MPC and wholly owns the MP Franchise, which each constitute "property of the

bankruptcy estate pursuant to 11 U.S.C. § 541(a)." *Id.* ¶¶ 6–7.

On February 22, 2016, the UST filed a Motion to Dismiss Pursuant to 11 U.S.C. § 707(a)

("UST Motion to Dismiss") requesting, *inter alia*, that the Court dismiss the Debtor's 2015

Bankruptcy for cause based upon the Debtor's bad faith and bar him from refiling another

bankruptcy case for two years under § 707(a). In the UST Motion to Dismiss, the UST alleged

that the Debtor:

> a) filed inaccurate and incomplete disclosures in his Chapter 7 Schedules and
> Statement of Financial Affairs . . . ; b) has failed to obey this Court's Order
> compelling turnover of financial information; c) has refused to cooperate with the
> Chapter 7 Trustee; d) has acted in bad faith; and e) is abusing the bankruptcy
> system.

Mot. to Dismiss Pursuant to 11 U.S.C. § 707(a) ¶ 6. The UST also echoed the Trustee's

conclusions that the Debtor failed to disclose "a substantial ownership interest in MPC" and

"deliberately obstructed and frustrated the [Trustee] from performing her duties under the

Bankruptcy Code." *Id.* ¶¶ 19–20. Finally, in order to illustrate the Debtor's lack of good faith and

intent to abuse the bankruptcy system, the UST pointed out that, when the Trustee asked the

Debtor in the 2014 Bankruptcy about his ownership interest in certain undisclosed assets, the

Debtor testified that "[t]o answer that question you'll have to get a subpoena. This is a personal

bankruptcy. Oh I'm ready for this to go years. Don't, don't [sic] get me wrong. I'm in no hurry.

It's gonna go years and I'm gonna be discharged in the end. I'm in it for the long haul." *Id.* ¶ 35.

On March 3, 2016, the Debtor filed an Objection to the Contempt Motion and UST

Motion to Dismiss. The Debtor alleged that he had "turned all of the documents in [his]

possession or that [he had] access to over to the [Trustee] and [her] attorneys." Objection 1, ECF

- 9 -

No. 56. He further alleged that "[t]here is no wrong doing or any attempt on [his] part to conceal any assets. The [Trustee] has all the information she needs to value my interests in any asset." *Id.*

On April 13, 2016, the Court held a hearing on the Contempt Motion and the UST Motion to Dismiss, at which the Debtor appeared *pro se*.[6] Although the Trustee gave direct testimony at the hearing, there was insufficient time for the Debtor to cross-examine the Trustee and provide his own testimony. Accordingly, the Court continued the hearing on the Contempt Motion and the UST Motion to Dismiss to May 4, 2016.

On April 21, 2016, Thomas Bielli ("Bielli") filed a notice of appearance as counsel for the Debtor. One day before the continued hearing on the Contempt Motion and UST Motion to Dismiss, Bielli filed amendments to all of the Debtor's schedules and Statement of Financial Affairs ("SOFA"). The Amended Schedule B now lists a 33% interest in MPC held by the Debtor. Bielli also disclosed that the Debtor had paid him $4,000 to represent him in the Debtor's case.

At the outset of the May 4, 2016 hearing, Bielli stated that he had produced over 600 documents to the Trustee pursuant to the Document Request and the Production Order and requested a two week adjournment in order to obtain a transcript of the testimony given by the Debtor at the prior meetings of creditors. Tr. of Hr'g May 4, 2016, 6:17–10:12. The UST and Trustee objected to the Debtor's request for an adjournment. The Court denied the request for an adjournment based upon the numerous opportunities that the Court had already given to the Debtor to retain counsel in the case, going back to January 6, 2016. *Id.* at 19:2–6.

---

[6] The Debtor asserted that, although he had approached an attorney to represent him at the April 13, 2016, hearing, the attorney had declined to represent the Debtor at such hearing because he would not have had "enough time to prepare." Tr. of Hr'g Apr. 13, 2016, 6:10–26. The Debtor therefore asserted that he merely needed more time to retain counsel. *Id.* at 7:19–20.

During the hearing, the Debtor testified that he had produced all bank statements, payroll

records, 1099s, reports, passwords, leases and contracts, pertinent contact information, and lists

of assets and debts in his possession for MPC. Tr. of Hr'g Apr. 13, 2016, 27:7–8, 33:24–34:2,

34:20–35:4, 38:11–39:25. Several of the 1099s to which the Debtor testified, however, were each

issued from MPC to the Debtor for 2014, reflected conflicting incomes, and did not reflect the

payment of any wages to the Debtor, only the reimbursement of various expenses he claimed.[7]

*Id.* at 37:11–38:10.

The Debtor admitted that he did not produce canceled checks, receipts, disbursement

journals, profit and loss statements, sales tax returns or any other "financial records" of MPC. *Id.*

at 27:9–30:3, 34:8–13.[8] He explained that he did not produce such documents because he either

could not understand what information was being requested or could not afford to employ an

accountant to prepare them. *Id.* However, the Trustee testified that the bank statements submitted

by the Debtor reflected "hundreds of thousands of dollars" of annual deposits into a business

savings account. *Id.* at 79:21–80:10. She therefore concluded that MPC must have filed sales tax

returns and employee payroll tax returns that the Debtor did not produce. *Id.* She also concluded

that MPC must have an undisclosed business savings account for which the Debtor did not

produce any bank statements. Tr. of Hr'g May 4, 2016, 91:25–92:5.

The Trustee also testified at the hearing that the Debtor claimed "$1,000 in monthly gross

wages, salaries, and commissions" in his bankruptcy schedules, even though he previously

claimed the same amount as "support from family members" in the 2014 Bankruptcy. Tr. of Hr'g

---

[7] Specifically, the first 1099, filed in the Debtor's 2014 Bankruptcy, reported an income of $12,000. Tr. of Hr'g Apr. 13, 2016, 86:17–21. The second 1099, marked corrected, reported an income of $10,000. *Id.* The third 1099, filed in the Debtor's 2015 Bankruptcy, reported an income of $1,000. Tr. of Hr'g May 4, 2016, 70:23–71:1.

[8] The Debtor did submit a personal tax return for 2010. Tr. of Hr'g Apr. 13, 2016, 84:4–11.

Apr. 13, 2016, 53:22–54:5. She further testified that the Debtor claimed *no income whatsoever* from the "operation of [a] business or [from] employment for the last three years" in his SOFA. *Id.* at 55:9–16.

At the hearing, both the Trustee and the Debtor gave testimony related to the Debtor's ownership of MPC and the MP Franchise. The Trustee testified that, although the MPC Bill of Sale (which purportedly conveyed the MP Franchise from Baystone to MPC) was dated December 29, 2009, records filed with the Department of State indicate that MPC was not formed until October 12, 2012. *Id.* at 69:16–19, 70:18–20. She also testified that she attempted to resolve this inconsistency with the Debtor, but was unable to examine the Debtor on the issue due to his aforementioned refusal to answer questions.[9] *Id.* at 76:18–22.

Moreover, the Trustee testified that the Debtor failed to produce any document that evidenced a transfer of ownership of the MP Franchise from himself to Baystone. *Id.* at 81:21–82:5. In contrast, she obtained a Franchise Agreement, Focus Management Software License Agreement, Franchisee Certificate, and Interoffice Memorandum from MPI that each identified the Debtor as the franchisee. *Id.* at 64:3–65:17. The Trustee also observed that the Franchise Agreement "prohibit[ed] the assignment of the franchise without written prior consent of the franchisor." *Id.* at 66:18–19. The Trustee then testified that she contacted MPI, the franchisor, which maintained that it never consented to an assignment of the MP Franchise from the Debtor to any entity and that it considered the Debtor to be the franchisee. *Id.* at 66:22–24. The cover page of the Franchise Agreement has the typed names of MPI and the Debtor but a hand-written notation adding Baystone to the Franchise Agreement. Similarly, the signature page to the

---

[9] The Debtor allegedly acknowledged the inconsistencies at a prior meeting of creditors, but insisted they were mere errors. Tr. of Hr'g Apr. 13, 2016, 84:13–19.

Franchise Agreement has MPI's typed name and authorized signatory as well as the Debtor's typed name and signature. Mot. to Extend Time Ex. B. However, Baystone's name is hand-written on the signature page and there is no signature of Baystone on the signature page. *Id.*

Finally, the Trustee testified as to two other sets of documents provided by the Debtor that she believed indicated that he owned the MP Franchise. One was the Debtor's personal tax returns for 2010, which reflected "gross receipts of $223,832" and associated expenses. Tr. of Hr'g Apr. 13, 2016, 84:4–11. The other was royalty statements from November 2012 to November 2015 issued by MPC that listed the Debtor as its owner. *Id.* at 72:9–16.

The issues presented by the Trustee's Contempt Motion and the UST's Motion to Dismiss are now ripe to be decided. For the reasons explained below, the Court will deny the Contempt Motion and grant the UST Motion to Dismiss with a two-year bar to refiling.

## III.    DISCUSSION

In the UST Motion to Dismiss, the UST requests that the Court dismiss this case pursuant to § 707(a) for bad faith and with a two-year bar to refiling, or in the alternative, grant an extension of time to file a complaint seeking denial of discharge under § 727. In addition, the Trustee moves to sanction the Debtor for contempt of the Production Order and to compel the turnover of the Documents, but requests that the Debtor only be sanctioned for contempt if the Court does not dismiss the Debtor's case. Tr. of Hr'g May 4, 2016, 111:3–7.

Section 707(a) provides that the Court may dismiss a bankruptcy case under Chapter 7 after notice and a hearing "only for cause," including for

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees or charges required under Chapter 123 of title 28; and

(3) failure of the debtor in a voluntary case to file . . . the information required by paragraph (1) of section 521(a), but only on a motion by the United States trustee.

11 U.S.C. § 707(a). Although § 707(a) does not explicitly include bad faith as a basis for

"cause," the examples provided are not exclusive. *See In re Smith*, 507 F.3d 64, 72 (2d Cir.

2007). Moreover, the Third Circuit has specifically held that § 707(a) allows a bankruptcy court

to dismiss a Chapter 7 case for cause "if the petitioner fails to demonstrate his good faith in

filing." *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000).

     Once a moving party calls a debtor's good faith into question, the debtor bears the burden

of establishing that he filed in good faith. *Id.* at 207 (citing *In re Marks*, 174 B.R. 37, 40 (E.D.

Pa. 1994)). To evaluate the debtor's good faith, courts consider "all of the facts and

circumstances surrounding the debtor's filing for bankruptcy." *Perlin v. Hitachi Capital Am.

Corp.*, 497 F.3d 364, 372 (3d Cir. 2007) (citing *In re Integrated Telecom Express, Inc.*, 384 F.3d

108, 118 (3d Cir. 2004)). Courts assess the Debtor's "honest intention" and whether he has

"abused the provisions, purpose, or spirit of bankruptcy law." *In re Tamecki*, 229 F.3d at 207

(quoting *In re Marks*, 174 B.R. at 40).

     Dismissal for bad faith "is generally utilized only in those egregious cases that entail

concealed or misrepresented assets *and/or* sources of income, lavish lifestyles, and intention to

avoid a large single debt based upon conduct akin to fraud, misconduct or gross negligence." *Id.*

(emphasis added) (quoting *In re Zick*, 931 F.2d 1124, 1129 (6th Cir. 1991)). The decision to

dismiss a petition for lack of good faith "rests within the sound discretion of the bankruptcy

court." *Id.*

     In addition, "bankruptcy courts, like all federal courts, have the power to restrict future

filings in order to prevent abuse." *In re Lee*, No. 03-33604BIF, 2007 WL 1650577, at *2 (Bankr.

E.D. Pa. June 5, 2007); *see also In re Narod,* 138 B.R. 478, 484 (E.D. Pa. 1992) (stating that the

court may preclude additional bankruptcy filings by the debtor within "whatever time period the

court deems reasonable"). Accordingly, pursuant to §§ 105(a) and 349(a), "bankruptcy courts have the power to dismiss a bankruptcy case with a bar against further refilings by that debtor" if the court determines that a debtor has abused the bankruptcy process in bad faith. *In re Lee*, 2007 WL 1650577, at *2 (citing *In re Casse*, 198 F.3d 327, 339 (2d Cir. 1999)).

In the case at hand, the UST argues that this case should be dismissed and the Debtor should be barred from refiling another case for two years based upon the Debtor's bad faith and abuse of the bankruptcy process as evidenced by the repeated inconsistencies in the Debtor's filings and material documents and the Debtor's refusal to cooperate with the Trustee in providing documents and testimony. Because the UST has called the Debtor's good faith into question, the Debtor has the burden of demonstrating that he has filed this case in good faith.

The Court finds that the Debtor has not met this burden. Specifically, the Court finds that the Debtor's deliberate and consistent refusal to answer the Trustee's questions at the meetings of creditors; his failure to respond to the Trustee's Document Request and the Court's Production Order; the unexplained inconsistencies throughout his testimony and between the same and his documentation, including MPI's documentation of his ownership interest in the MP Franchise; and his contradictory and inaccurate bankruptcy schedules, SOFA, tax return, and 1099s, each demonstrate a lack of honest intention and an abuse of the bankruptcy process inconsistent with good faith. They further constitute deliberate efforts to conceal and misrepresent his assets and sources of income in order to receive a discharge from his debts. As a result, the Debtor's bad faith is sufficiently egregious to warrant a bad faith dismissal and a two year bar from refiling another bankruptcy case.

### A.    Refusal to Testify at the Meetings of Creditors

This Court finds that the Debtor's repeated refusal to answer the Trustee's questions at the numerous meetings of creditors scheduled by the Trustee constitutes bad faith because the

Debtor has a duty under § 521(a)(3) to "cooperate with the trustee as necessary to enable the trustee to perform the trustee's duties." 11 U.S.C. § 521(a)(3); *see also In re Mottilla*, 306 B.R. 782, 790 (Bankr. M.D. Pa. 2004) (quoting *In re Khan*, 172 B.R. 613, 625 n.23 (Bankr. D. Minn. 1994)) (stating that the Debtor's "intentional acts to hinder the trustee in the administration of the estate and the investigation in connection with it" are evidence of bad faith). The Debtor's consistent refusal to answer the Trustee's questions at the numerous meetings of creditors scheduled in the 2014 Bankruptcy and 2015 Bankruptcy supports a finding of bad faith because the Debtor has deliberately obstructed the Trustee from performing her duties. *See In re Ciotti*, 442 B.R. 412, 416 (Bankr. W.D. Pa. 2011) (finding that dismissal is appropriate when the Debtor's refusal to answer the trustee's questions impairs her ability to administer the estate).[10]

In addition, the Court specifically scheduled a hearing during the 2014 Bankruptcy to explain to the Debtor that the Trustee had a right to ask questions and instructed him that he had a duty to answer the Trustee's questions at the next meeting of creditors. However, even after this explanation and instruction, the Debtor again refused to answer the Trustee's questions at the next meeting of creditors and, without any reasonable basis, told the Trustee that her questions were not relevant and that she had no right to ask them. The Debtor also told the Trustee that she would need to direct her questions to his attorney, but then refused to give her the name of his attorney.

The Debtor's explanations for his continued refusal to cooperate with the Trustee at the meeting of creditors are not persuasive. The Debtor told the Trustee that he could not answer her

---

[10] The Debtor's conduct in the 2014 Bankruptcy is relevant to the present assessment of the Debtor's bad faith. *See In re Simmons*, 200 F.3d 738, 743 (11th Cir. 2000) (finding that a Debtor's actions in his prior cases are relevant to dismissal); *In re Worthy*, No. 10-10027, 2010 WL 1994851 (Bankr. E.D. La. May 18, 2010) (stating that "[s]pecific and material misrepresentations or omissions in connection with a debtor's prior case administration, are relevant to a debtor's assertion of good faith in a subsequent case").

questions at the February 10, 2016, meeting because he did not have an attorney with him. However, this meeting was held more than one month after this Court had urged the Debtor to retain an attorney at the January 6, 2016, hearing. The Debtor also testified that he answered all of the questions at the meetings to the best of his ability without his attorney present. However, this explanation is belied by his refusal to answer straightforward questions about his ownership interest in the MP Franchise, his assets and income, the names of certain individuals, the addresses of his family members, and whether he owned an automobile.

The Debtor's pattern of evasive behavior at these meetings, even after the Court instructed him to answer the Trustee's questions; the Debtor's refusal to answer questions without an attorney one month after the Court advised him to retain one; and the Debtor's insistence that the Trustee direct her questions to his attorney and his refusal to give the Trustee that attorney's name, all lead this Court to find that the Debtor has deliberately obstructed the Trustee's efforts to investigate his estate, has abused the bankruptcy process, and has therefore acted in bad faith. *Cf. In re Ventura*, 375 B.R. 103, 109 (Bankr. E.D.N.Y. 2007) (finding that the Debtor's refusal to cooperate with the United States Trustee's auditor constituted cause for dismissal under § 707(a)).

**B.      Failure to Comply with the Production Order**

The Debtor's failure to comply with the Court's Production Order also demonstrates bad faith because it evinces a deliberate effort to conceal assets or income from the Trustee. *See In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (holding that a Debtor's effort to conceal or misrepresent his assets or income supports a finding of bad faith); *In re Glunk*, 342 B.R. 717, 734–35 (Bankr. E.D. Pa. 2006) (identifying a Debtor's lack of full and candid disclosure as an example of bad faith). Even though the Debtor received the Document Request on November 30,

2015, he demonstrated a near complete failure to provide the Documents by the Court-ordered deadline of February 6, 2016, or anytime thereafter, indicating a lack of honest intent inconsistent with a good faith effort to comply.

The Court does not find the Debtor's explanations for his failure to respond to the Production Order credible. The Debtor testified, for example, that he could not provide canceled checks because he did not know what they were. However, the Debtor has managed MPC and its finances for years and it therefore stretches the bounds of reality to conclude that he was unfamiliar with the concept of canceled checks. Further, the Debtor's insistence that he provided all of the documents in his possession, and that MPC simply lacked typical financial records like receipts or disbursement journals, is belied by his eventual submission of over 600 documents to the Trustee on May 3, 2016, the night before the Debtor's final hearing on the Contempt Motion and UST Motion to Dismiss.

The Debtor's failure to comply with the Production Order until nearly three months after the Court's deadline evinces a deliberate effort to conceal his assets and income from the Trustee, contrary to his duties under the bankruptcy laws. The Court concludes that such conduct demonstrates an abuse of the bankruptcy process and egregious bad faith.

### C.    Misrepresentation of Ownership of the MP Franchise and MPC

The Debtor has also engaged in bad faith concealment or misrepresentation of assets by testifying that he has no interest in the MP Franchise and that Baystone was the initial transferor of the MP Franchise, thus deliberately misleading the Trustee. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000) (holding that a Debtor's effort to misrepresent his assets or income supports a finding of bad faith). The Debtor's testimony that he does not hold any interest in the MP Franchise is patently incredible. His testimony in this case completely contradicts his testimony during the meeting of creditors in the Baystone bankruptcy, where he stated that he is the owner

of the MP Franchise, not MPC. Clearly, the Debtor either lied under oath to Dershaw in the

Baystone case or he lied under oath to the Trustee in this case.

Moreover, the Franchise Agreement, the Focus Management Software License

Agreement, the Franchisee Certificate, and the Interoffice Memorandum, all identify the owner

of the MP Franchise as the Debtor. Further, the Franchise Agreement prohibits an assignment of

the MP Franchise without prior written consent of MPI. MPI's corporate counsel has represented

that it did not authorize the Debtor to assign the MP Franchise and that MPI considers the

franchisee to be the Debtor.

Also incredible is the MPC Bill of Sale dated December 29, 2009, which purports to

convey the MP Franchise from Baystone to MPC. The MPC Bill of Sale directly conflicts with

the terms of the Debtor Bill of Sale, the Debtor's testimony at the Baystone meeting of creditors,

the Franchise Agreement, the Debtor's 2010 personal tax returns, and Department of State

records.

First, it is unclear how Baystone could have had title to the MP Franchise when it was

initially transferred to the Debtor and still held by the Debtor during the Baystone bankruptcy.

Based upon the Debtor's testimony to Dershaw during the Baystone meeting of creditors in

2012, the MP Franchise was owned by the Debtor for at least four (4) years, since November

2008. Second, the Debtor's 2010 personal tax returns indicate that he was the owner of the MP

Franchise in 2010, the only year for which he provided tax returns. Third, Department of State

records indicate that MPC was created on October 12, 2012, which is consistent with the

Debtor's testimony during the Baystone meeting of creditors but contradicted by the terms of the

Baystone Bill of Sale, which was purportedly executed in 2009. The Debtor acknowledged that

the documents contradicted each other, but claimed that the discrepancy was a mere error and offered no further explanation.

Based upon the discrepancies between the Debtor's testimony to the Trustee and the MPC Bill of sale on one hand, and his testimony to Dershaw and all other available documents on the other hand, and also upon the Debtor's failure to explain his contradictory testimony, the Court must conclude that he has deliberately misrepresented his ownership interest in the MP Franchise and concealed assets and income from the Trustee. Such misrepresentations and concealment constitute abuses of the bankruptcy process and bad faith.

**D.      Inconsistent Schedules, SOFA, 1099s, and Other Documents**

To compound the inaccuracies and inconsistencies among the conflicting bills of sale and franchise documents, the Debtor's bankruptcy schedules, SOFA, and other documents reflect additional inaccuracies and inconsistencies sufficient to indicate that he did not file his bankruptcy petitions in good faith or with honest intention. The Debtor's refusal to answer the Trustee's questions to resolve inaccuracies in his documents further suggests a lack of honest intention and an intent to abuse the bankruptcy process.

As explained above, the Debtor produced three 1099s that reflected conflicting incomes for 2014, which the Debtor refused to explain; characterized certain earnings as support from family members in his 2014 Bankruptcy schedules and as income in his 2015 Bankruptcy schedules; omitted any reference to an automobile from his schedules, but left the Sixth Meeting in an automobile and refused to explain his primary means of transportation; failed to sign the required declaration that his schedules were true and correct; erroneously disclosed no income in his SOFA; and finally disclosed his membership interest in MPC in his Amended Schedule B in May 2016, which he failed to do in all of his prior schedules.

The foregoing errors, omissions, and inconsistencies in the Debtor's bankruptcy schedules, SOFA, and 1099s, in addition to the inconsistent franchise documents, suggest more than just a lack of attention to detail and are indicative of his bad faith. Moreover, the Debtor's refusal to cooperate with the Trustee's efforts to resolve such errors, inconsistencies, and omissions leads this Court to conclude that the Debtor has deliberately concealed or misrepresented his assets and income and obstructed the Trustee's efforts to investigate his finances in his pursuit of a discharge of his large real estate debt, and has thus acted in bad faith.

## IV.    CONCLUSION

In light of the foregoing, the Court concludes that the Debtor has abused the provisions, purpose, and spirit of the Bankruptcy Code and has therefore failed to demonstrate that he filed this case in good faith. The Debtor's bad faith is sufficiently egregious to warrant a bad faith dismissal under § 707(a) as well as a bar to any future filings for the next two years. Accordingly and as discussed above, this Court will not reach the merits of the Contempt Motion.

An appropriate order follows.

Date: September 16, 2016

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge